## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

GERONIMO REGALADO,

      Plaintiff,

vs.                                                                          No. 09cv502 WJ/WDS

DRB ELECTRIC, INC.,

      Defendant.

### MEMORANDUM OPINION AND ORDER IMPOSING JURY COSTS

The above-captioned case went to jury trial on June 6, 2011.  Plaintiff asserted age and national origin discrimination in violation of federal civil rights statutes and state law.  After two days of trial and at the close of Plaintiff's case,[1] the parties advised the Court that a settlement had been reached.  Following dismissal of the jury, I advised the parties that I would approve the settlement, but that I was considering charging Mr. Regalado for jury expenses (Doc. 58).

### I.    Background

The Court ordered the Jury Administrator to provide a listing of jury costs (Doc. 57), which amounts to a total of $2,080.31, or $1,684.32 for day one, and $395.99 for day two (Doc. 60-1).  I also ordered that the settlement proceeds in this case be tendered into the Court's registry and ordered Plaintiff to show cause why jury costs should not be assessed against the proceeds (Doc. 58).[2] Plaintiff responded to the Court's Show Cause Order by stating that he is

_____

[1] The parties announced that they had reached a settlement shortly after Plaintiff rested his case, but just before the Court was to announce that it was granting Defendant's motion for judgment as a matter of law, thereby dismissing Plaintiff's case.

[2] Notwithstanding Plaintiff's refusal to sign the settlement documents at this point, the settlement proceeds were tendered into the Court Registry on July 15, 2011.

not "learned in the law" and "has not had prior experience with going to trial. . . ."  Doc. 59 at 1.

Plaintiff urges the Court to refrain from imposing sanctions on the basis that such an action

might discourage individuals from settling their cases at trial "for fear of facing sanctions."  *Id.*

Mr. Santiago Juarez, counsel for Plaintiff, advised the Court by letter dated July 7, 2011,

that Plaintiff had decided not to sign the settlement documents before receiving a complete

breakdown of how much money he would receive.  Mr. Juarez could not provide this

information to Mr. Regalado prior to the Court's decision regarding payment of jury costs.

During the July 25, 2011 status conference held in this case, Defendant advised the Court that it

will be filing a motion to enforce the settlement agreement due to Plaintiff's refusal to sign

documents that are necessary to the settlement. That matter is set for hearing on Thursday,

August 11, 2011.

## II.     Legal Standard

The district court has discretion to assign jury costs.  *Sally Beauty Co., Inc. v. Beautyco,*

*Inc.*, 372 F.3d 1186, 1189 (10th Cir. 2004).  In considering whether to assess costs against either

or both parties, the court should examine the "totality of the circumstances, including the

specific case under review, the total management problems for courts, and access and cost

problems for litigants." *Id.*

> [W]here an attorney's conduct . . . wastes the jury's time, a district court is well
> within its discretion to assign jury costs to the attorney. In fact, . . . in such cases,
> courts should assign costs where the fault lies. . . . [B]y requiring those who
> created the costs to bear them, court efficiency is promoted and tax money saved.

*Id.*

In order to satisfy the requirements of due process, before assessing fees, a court must

make specific findings sufficient to: (1) identify the excess costs providing a basis for the

assessment; (2) identify the conduct leading to the sanctions in order to provide notice and to

allow a meaningful response from the sanctioned attorney or party; and (3) identify for the

reviewing court the reason for the sanction. *Id.* at 1190. "'The fundamental requirement of due

process is the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Id.* at

1191 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

## III.    Discussion

### A.      Imposition of Jury Costs

The Court will impose the full amount of jury costs, $2,080.31, against the settlement

proceeds.  I find that Plaintiff rejected several earlier offers of settlement prior to trial, despite

his counsel's urging to accept these offers as fair settlement.  I also specifically find that the

decision to turn down a settlement resolution in this case rests solely with Mr. Regalado and not

with his attorney.  Counsel for both parties were in agreement for some time as to a settlement

disposition of the case, but Mr. Regalado rejected this offer of settlement and insisted on going

to trial, despite the repeated advice of his counsel who is a seasoned attorney in these matters.[3]

Following a lunch recess on the second day of trial and after the close of Plaintiff's case,

Plaintiff accepted the same amount of settlement that had been offered prior to trial.

The Court advised that it felt that Plaintiff's case of discrimination against Defendant was

devoid of any merit, and questioned defense counsel to ascertain whether settling the case was

what Defendant DRB Electric wanted to do. After being assured by counsel that the parties

wanted to settle the case, the Court reluctantly approved the oral settlement. The Court now

---

[3] Plaintiff's counsel, Santiago Juarez, took over representation of Plaintiff after Plaintiff's original attorney, Dennis Montoya, was suspended from the practice of law by the New Mexico Supreme Court.

3

specifically finds that Plaintiff's case lacks any merit, and as such, this is one of the reasons the Court is taxing the jury costs against Plaintiff.

Plaintiff's complaint raised claims of race discrimination, national origin discrimination, age discrimination, retaliation, and retaliatory discharge (Doc. 1). The race discrimination claim was dismissed as a matter of law before trial, because as a Hispanic, Plaintiff is not in a protected class for purposes of racial discrimination. The Court finds that the evidence put on during Plaintiff's case was insufficient to support either the claims of discrimination or retaliation.

### 1.      Retaliation

Count IV, retaliation, arises under Title VII and the New Mexico Human Rights Act ("HRA"). Both Title VII and the HRA prohibit retaliation because an employee opposed an unlawful discriminatory practice, or because that employee participated in what the law considers protected activity. Plaintiff claimed that Defendant retaliated against him by suspending and terminating him from employment after he complained of discrimination to the EEOC, and complained of workplace safety standards at DRB Electric to OSHA.

Plaintiff offered no evidence that he made complaints to the EEOC prior to his suspension and/or termination. Plaintiff filed his complaint with the EEOC on April 29, 2008. This was almost a month after he stopped working at DRB. Plaintiff contends that he contacted the EEOC "much earlier" than this date, but there is no evidence of this contact, or proof that anyone in authority at DRB knew about Plaintiff's contacting the EEOC.

As a matter of law, retaliation cannot occur where the retaliatory supervisor was unaware that the employee engaged in protected opposition. *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182 (10th Cir. 2002). Therefore, Plaintiff cannot sustain his claim of retaliation under Title VII

4

or the HRA based on complaints of discrimination he allegedly made to the EEOC.

It is not clear, from either the pleadings in this case or his evidence presented at trial, whether Plaintiff bases his Title VII/HRA claim on his OSHA complaint. However, Title VII would not consider an OSHA complaint to be protected activity, *see, e.g.*, *Jamil v. Sec'y, Dep't of Defense*, 910 F.2d 1203, 1207-08 (4th Cir. 1990), and the HRA would likely follow suit, *see Ocana v. Am. Furniture Co.*, 91 P.3d 58, 69 (N.M. 2004) (explaining that HRA discrimination law looks to federal doctrine for guidance).

But even assuming that complaining of workplace safety standards to OSHA is protected activity under Title VII, Plaintiff's claim still fails. First, Plaintiff offered no evidence that OSHA actually received his complaint of workplace safety standards. Second, and more importantly, Plaintiff had no evidence from which a reasonable juror could infer that DRB Electric knew of his complaining about workplace safety standards. Plaintiff's own testimony was inconsistent on this point. He hinted – but never actually affirmatively stated – that he may have discussed some of his concerns with his supervisor, Ken Perea. However, upon being asked a direct question, he responded that he never told Ken Perea or anyone else about his concerns and that he did not want to stir up trouble, he just wanted to work.

Count V of the complaint, retaliatory discharge, arises under New Mexico tort law. In order to recover on a claim of retaliatory discharge, an employee must demonstrate that he was discharged because he performed an act that public policy has authorized or would encourage. In this case, Plaintiff contended that he was discharged because he complained about discrimination to the EEOC and workplace safety standards to OSHA. This claim fails for the same reasons as his first retaliation claim – a lack of evidence that anyone in authority at DRB knew or suspected of Plaintiff's complaints prior to his discharge.

5

### 2.    Discrimination

Counts II and III - national origin and age discrimination arising under Title VII and the
HRA – also fail based on the evidence presented by Plaintiff at trial. In the absence of direct
evidence of discrimination, a plaintiff must rely on the three-part *McDonnell Douglas*
framework to prevail under Title VII. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973);
*Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1225-26 (10th Cir. 2008). Under this framework, a
plaintiff must first establish a prima facie case of discrimination. If the plaintiff makes this
showing, the defendant must proffer a legitimate, nondiscriminatory reason for the retaliatory
actions. The plaintiff then has the burden of demonstrating that the defendant's asserted reasons
for the actions are pretextual. *Fye*, 516 F.3d at 1227. New Mexico looks to federal law for
guidance, *Ocana v. Am. Furniture Co.*, 91 P.3d 58, 69 (N.M. 2004), and has adopted the same
burden-shifting framework for NMHRA claims, *Sonntag v. Shaw*, 22 P.3d 1188, 1196-97 (N.M.
2001).

In order to establish a prima facie case of race or national origin discrimination, Plaintiff
must demonstrate that: (1) she is a member of a protected class; (2) she suffered an adverse
employment action; and (3) that the adverse employment action occurred under circumstances
giving rise to an inference of discrimination. *Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d
1177, 1181 (10th Cir. 2002). To prove prima facie case of age discrimination, plaintiff must
show: (1) he is member of class protected by ADEA; (2) he suffered an adverse employment
action; (3) he was qualified for position at issue; and (4) he was treated less favorably than others
not in protected class. *Jones v. Oklahoma City Public Schools*, 617 F.3d 1273, 1279 (10th Cir.
2010).

First, Plaintiff offered no direct evidence of discrimination. Plaintiff testified that he

experienced one racially harassing comment while working at DRB Electric, but explained that he never again saw the offender in the course of his employment with DRB Electric. This evidence is basically the opposite: it is direct evidence that DRB had strict policies *against* discrimination, and acted on them. Plaintiff offered no direct evidence related to his claim of age discrimination.

Second, Plaintiff's claim fails on a theory of circumstantial evidence as well. Plaintiff did not show that his suspension/termination arose under circumstances giving rise to an inference of national origin or age discrimination. "[O]rdinarily, th[is] part of th[e prima facie] test will be satisfied by proof that the employer treated similarly situated employees more favorably." *Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1181 (10th Cir. 2002). Plaintiff pointed to a younger white male who was allegedly Plaintiff's "replacement," but Plaintiff admitted that the other male was hired well before Plaintiff was either suspended, terminated, or any other adverse employment action was taken against him. Plaintiff did not testify that the other male was hired as a supervisor, at the same hourly wage Plaintiff was receiving. Therefore, the other male was not similarly situated to Plaintiff.

Moreover, Plaintiff offered no evidence from which a reasonable jury could have inferred that DRB Electric's reasons for firing him were pretextual. Plaintiff admitted that DRB Electric informed Plaintiff that he was not performing his job adequately. Plaintiff admitted that he misused his company cell phone and his company truck. Plaintiff admitted that he signed a document indicating he was aware of the policies against misuse of company property. More crucially, Plaintiff admitted during his own testimony that after he received a pay raise and became a supervisor, he refused to take the responsibility for showing up to job sites with the proper equipment, and on occasion did not even show up to job sites at all. Frankly, the Court

finds it beyond belief that Plaintiff would blame DRB Electric for "safety violations" when it was clearly Plaintiff's miscues that were responsible for his own working conditions.

In sum, Plaintiff had no evidence to support any count of his complaint. His case was entirely frivolous from start to finish, and the assessment of jury costs reflects his unreasonable refusal to accept a settlement offer before trial. His behavior and attitude effected a substantial and serious waste of the jury's civic service, not to mention judicial resources in preparing jury instructions and holding a day-and-a-half long trial.

### B.      Due Process

Mr. Juarez informed the Court at the beginning of trial and prior to voir dire of the jury, that his relationship with his client had deteriorated (*see* Doc. 56, Clerk's Minutes).  In a last effort to encourage a settlement resolution, the Court explained to Plaintiff that since there was an offer of settlement on the table, Plaintiff would be responsible for all costs of this trial if he proceeded to trial and lost.  Mr. Regalado has now had an opportunity to explain to the Court why jury costs should not be assigned out of the settlement proceeds, and I am not persuaded by any of his reasons.  Plaintiff's description of himself as unfamiliar with the legal system does not comport with evidence that was presented during the two days of trial. While Plaintiff might not be learned in the law, he has had considerable experience filing lawsuits against several former employers and these lawsuits have resulted in several settlement resolutions.

During the July 25, 2011 status conference, Mr. Juarez stated that his Response to the Court's Order to Show Cause was sufficient to explain Plaintiff's position with regard to the Order to Show Cause. Specifically, Mr. Juarez advised that the actual amount of costs assessed is not being challenged; rather, Plaintiff objects to being ordered to pay the costs at all. Therefore, Plaintiff has received all process that he is due with regard to this issue – ample

notice as well as an opportunity to be heard.

Mr. Juarez represents that there are no outstanding cost bills, that counsel has advanced no costs to Plaintiff, and that his fee arrangement is forty percent (40%) of the settlement amount.  Doc. 59 at 2.  Plaintiff now knows the settlement amount, knows the amount he has agreed to pay for attorney's fees from that amount, and now knows the amount by which the proceeds will be reduced due to the jury costs as well as the Court's reasons for imposing these costs. He has received all the process he is due in this matter.

**IV.      Conclusion**

Plaintiff's claims in this case were totally devoid of any merit and his stubborn intransigence in refusing to follow his lawyer's sage advice and accept a reasonable and generous pretrial offer of settlement resulted in a colossal waste of time and resources for everyone concerned, especially the jury. Those individuals who served on this jury gave up time from their families and their jobs to perform their civic duty and the taxpayer dollars expended by the Clerk of Court for this jury shall be borne by the Plaintiff.

**THEREFORE, IT IS ORDERED** that jury costs in the amount of $2,080.31 are hereby imposed on Plaintiff and the Court Clerk shall proceed to take the necessary steps to withdraw the sum of $2,080.31 from the proceeds in the Court's registry in order to reimburse the Jury Department.

_____
UNITED STATES DISTRICT JUDGE